IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN DAVID JUST,<br><br>Defendant. | CR 23-78-BLG-SPW<br><br>ORDER ON MOTION TO DISMISS COUNTS 2, 3, AND 4 (SECOND AMENDMENT) |

On December 2, 2024, Defendant John David Just moved to dismiss Counts 2, 3, and 4[1] of the indictment arguing that the charges violate his Second Amendment right to bear arms under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). (Docs. 46, 47). The Government opposes the motion. (Doc. 54).

For the following reasons, the Court denies Just's motion.

I.   **Background**

In September 2022, agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") discovered that Just was selling firearms without a license at his bar in Ashland, Montana. (Doc. 54 at 2). Undercover ATF agents purchased firearms from Just throughout September, November, and December of 2022. (*Id.*).

---

[1] The Defendant wrote "Counts 2, 3, and 4" in the caption and the body text of his motion (Doc. 46). However, the Defendant omitted "Count 3" in the caption of his supporting brief but included it in the body text (Doc. 47). Accordingly, the Court will rely on the supporting brief's body text and address Counts 2, 3, and 4 in the Order.

1

ATF agents obtained a search warrant for Just's bar and executed the warrant on January 5, 2023. (*Id.*). ATF agents discovered numerous firearms and ammunition including a privately made firearm (PMF) receiver and a pistol with a smooth bore designed to fire a fixed shotgun shell. (*Id.*). Neither the PMF receiver nor the pistol was registered to Just. (Doc. 3).

Title 28 of the United States Code provides the ATF with the authority to investigate criminal and regulatory violations of federal firearm law. The ATF Firearms and Ammunition Technology Division provides expert technical support to federal law enforcement agents regarding the Gun Control Act and National Firearms Act. In this case, Firearms Enforcement Officer (FEO) Anthony Arena examined Just's PMF receiver and filed a report with his findings on February 6, 2023. (Docs. 44-1, 52-1). According to FEO Arena's investigation, he concluded that Just's PMF receiver qualified as a machinegun under federal law. (Doc. 52-1 at 4).

On June 22, 2023, Just was charged with five counts: (1) engaging in the business of dealing firearms without a license in violation of 18 U.S.C. §§ 922(a)(1)(A), 923(a), and 924(a)(1)(D); (2) illegal possession of a machinegun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2); (3) possession of an unregistered firearm in violation of 26 U.S.C. §§ 5841 and 5861(d) as to the pistol; (4) possession of an unregistered firearm in violation of 26 U.S.C. §§ 5841 and 5861(d) as to the

machinegun; and (5) possession of a machinegun without a serial number in violation of 26 U.S.C. §§ 5861(i) and 5871. (*Id.*).

The instant motion pertains to Counts 2, 3, and 4—unlawful possession of a machinegun and unlawful possession of unregistered firearms.

## II. Legal Standard

Federal Rule of Criminal Procedure 12(b)(1) provides that a party may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits. A pretrial motion is proper when it involves questions of law rather than fact. *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). The Court has determined Just's motion is appropriate for pre-trial resolution because it solely involves a question of law.

In reviewing a motion to dismiss an indictment, a court must "assume the truth of what the indictment alleges." *United States v. Afshari*, 426 F.3d 1150, 1153 (9th Cir. 2005). Here, Just brings a facial and as-applied challenge to the statutes he faces in Counts 2, 3, and 4. (Doc. 47 at 2). To prevail on a facial challenge, he must demonstrate that "no set of circumstances exists under which the [statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). This is a "heavy burden." *Id.* Courts facing simultaneous as-applied and facial challenges ordinarily resolve the as-applied challenge before addressing the facial challenge. *Bd. of Trustees of St. Univ. of N.Y. v. Fox*, 492 U.S. 469 (1989).

3

## III. Analysis

Just argues that 18 U.S.C. § 922(o) and 26 U.S.C. §§ 5841 and 5861(d), which prohibit unlawful possession of a machinegun and unlawful possession of unregistered firearms, are unconstitutional. (Doc. 47 at 2). First, Just contends that his conduct is covered by the Second Amendment's plain text, which protects the right to own and possess arms, including the PMF receiver and the smooth bore pistol. (*Id.* at 4). Second, Just asserts that the Government has not demonstrated that the modern regulations are consistent with the Nation's historical tradition of firearm regulation. (*Id.*).

The Government disputes Just's challenge, arguing that that the PMF receiver, though not fully assembled, is a machinegun under federal law. (Doc. 54 at 3). First, the Government contends that the Second Amendment right to bear arms is not unlimited and does not extend to dangerous and unusual weapons such as machineguns. (*Id.* at 2–3). Second, it contends that the text, history, and tradition of the Second Amendment support the Government's authority to ban or register firearms not typically possessed by law-abiding citizens. (*Id.* at 8).

The Court will first address the constitutionality of 18 U.S.C. § 922(o) and 26 U.S.C. §§ 5841 and 5861(d) under the Second Amendment. The Court will then address Just's as-applied and facial challenges.

*A.     The Second Amendment Framework*

The Second Amendment guarantees as follows: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In 2022, the Supreme Court decided *New York State Rifle & Pistol Ass'n, Inc. v. Bruen* finding that the Second Amendment's plain text coupled with an historical analysis of the Nation's gun regulation traditions protects an individual's right to carry a handgun for self-defense. *Bruen*, 597. U.S. at 17, 28–29. The Court rejected the means-end scrutiny tests previously applied by appellate courts, holding instead that courts must apply "[t]he test set forth in *Heller*" to "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26 (citing *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008)).

Courts have called the *Bruen* analysis a two-step test. First, if "the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 24. Second, to regulate protected conduct, the government must show that its regulation "is consistent with the Nation's historical tradition of firearm regulation." *Id.* The historical analysis requires courts to pay close attention to "[w]hy and how the regulation burdens the right." *United States v. Rahimi*, 602 U.S. 680, 692 (2024); *Bruen*, 597 at 29. When engaging in analogical inquiry, "[a] court must ascertain whether the new law is

5

'relevantly similar' to laws that our tradition is understood to permit, 'applying faithfully the balance struck by the founding generation to modern circumstances.'" *Rahimi*, 692 U.S. at 692 (quoting *Bruen*, 597 U.S. at 29); *see also Bruen*, 597 U.S. at 30 (requiring the government to "identify a well-established and representative historical *analogue*, not a historical *twin*.") (emphasis in original). Specifically, "the government must prove that the firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 20. "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10 (1961)).

        *1.*      *Constitutionality of 18 U.S.C. § 922(o) (Count One)*

The threshold question under *Bruen* is whether the Second Amendment's plain text applies to Just and his conduct. "In alignment with *Heller*, it requires a textual analysis, determining whether the challenger is 'part of the people whom the Second Amendment protects,' whether the weapon at issue is 'in common use today for self-defense,' and whether the 'proposed course of conduct' falls within the Second Amendment." *United States v. Alaniz*, 69 F.4th 1124, 1128 (2023) (citing *Bruen*, 597 U.S. at 31–33; *Heller*, 554 U.S. at 580, 627) (internal quotations omitted).

Here, there is no dispute that Just is part of the people whom the Second Amendment protects. However, before the Court can determine whether Just's PMF receiver is in common use or whether his proposed course of conduct falls within the Second Amendment, the Court must decide whether the receiver qualifies as a machinegun.

Just argues that the PMF receiver does not qualify as a "machinegun" and thus, is mischaracterized as a dangerous and unusual weapon by the Government. (Doc. 47 at 5–6). He states: "[T]he alleged machinegun . . . was not readily operable, was stored in a gun case, and could not be operated until the ATF agent added five essential components and [sic] altered at least one of those components to fit into the receiver of the gun." (*Id.* at 6). The Government disputes Just's challenge arguing that the machinegun receiver, though not fully assembled, constitutes a machinegun under federal law. (Doc. 54 at 3).

As always, the Court begins by looking at the statutory text. *See Garland v. Cargill*, 602 U.S. 406, 415 (2024). Under the Gun Control Act, the term "machinegun" is defined by the National Firearms Act ("NFA"). 18 U.S.C. § 921(a)(24). Under the NFA, a "machinegun" is:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The *term shall also include the frame or receiver* of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, *for use in converting a weapon into a machinegun*, and any combination of parts from

7

which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b) (emphasis added).

According to the ATF:

The term receiver means the part of the ... projectile weapon ... that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure.

27 C.F.R. § 478.12. When FEO Arena investigated the PMF receiver, he found it was "equipped with a receiver extension (buffer tube), take-down pins, magazine release, bolt catch/release, selector spring/detent, and pistol-type grip." (Doc. 44-1 at 9). FEO Arena's examination revealed that the receiver possessed "the holes to facilitate the installation of a M16-type machinegun automatic sear and pin. The automatic sear pin holes serve only to provide a mounting position for the automatic sear on select fire M16-type machineguns." (*Id.* at 10). Finally, FEO Arena noted that "[t]he presence of the [sear pin] holes, in the correct location, on an AR-type receiver, constitutes the 'receiver' of a 'machinegun.'" (*Id.*). Based on FEO Arena's report, the Court finds that Just's PMF receiver meets the ATF's definition of a receiver. It follows that the receiver is a machinegun because the plain language of the statute includes "receiver" in the definition of a machinegun.

Furthermore, the Court notes there is limited dispute between the parties about the statutory definition of a machinegun. In fact, both parties refer to Just's PMF as

the "machinegun receiver." (Doc. 47 at 4, 6; Doc. 44-1 at 2, 3; Doc. 54 at 2, 3). Though Just argues that the receiver was not readily operable, the statute does not require the receiver be readily operable. Rather, the statute requires only that the receiver for a weapon "is for use in converting a weapon into a machinegun," which FEO Arena demonstrated and reported in his examination of the PMF receiver. (Docs. 44-1, 52-1). Without additional dispute, the Court will not belabor the issue. Therefore, the Court finds that Just's PMF receiver meets the federal statutory definition of a "machinegun."

Because the PMF receiver is a machinegun under federal law, the Court must next determine whether the machinegun is in common use or whether Just's proposed course of conduct falls within the Second Amendment. The Court agrees with the Government that the machinegun is not in common use. (Doc. 54 at 4–7).

In *Heller*, the Supreme Court clarified that the Second Amendment protects arms "in common use" for lawful purposes such as self-defense. 554 U.S. at 627. The Court indicated that the Second Amendment does not protect "dangerous and unusual weapons." *Id.* Though the Court did not specify the types of weapons that qualify as "dangerous and unusual," it stated that it would be "startling" for the Second Amendment to protect machineguns. *Id.* at 624. Since *Heller*, the Ninth Circuit has held that "machinegun possession is not entitled to Second Amendment protection." *United States v. Henry*, 688 F.3d 637, 640 (2012). In *Henry*, the court

reasoned that a modern machinegun capable of firing more than 1,000 rounds per minute, "allowing a shooter to kill dozens of people within a matter of seconds," would qualify as a "dangerous" weapon. *Id.* "Short of bombs, missiles, and biochemical agents," the Ninth Circuit court conceived "of few weapons that are more dangerous than machineguns." *Id.* It further reasoned that machineguns are "unusual" because private possession has been unlawful since 1986. *Id.* "Outside of a few government-related uses, machineguns largely exist on the black market." *Id.*

Here, the Court finds that machineguns are "dangerous and unusual weapons" that are not "typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625, 627. Therefore, the Second Amendment's plain text does not apply to machineguns.

Thus, the *Bruen* analysis ends here. "If the government can prove that the regulated conduct falls beyond the [Second] Amendment's original scope, 'then the analysis can stop []; the regulated activity is categorically unprotected.'" *Bruen*, 597 U.S. at 18 (reiterating a part of the *Heller* framework rooted in the Second Amendment's text) (quoting *United States v. Greeno*, 679 F.3d 510, 518 (CA6 2012)). The Court finds that the Government has properly shown that dangerous and unusual weapons fall outside the Second Amendment's scope. Therefore, Just's PMF receiver is not protected by the Second Amendment.

10

2.  *Constitutionality of 26 U.S.C. §§ 5841 and 5861(d) (Counts Three and Four)*

Next, Just argues that the prohibition of unlawful possession of an unregistered gun under 26 U.S.C. §§ 5841 and 5861(d), is unconstitutional. (Doc. 47 at 2). However, Just offers little to no reasons or legal authority as to why the statutes are unconstitutional. The Government provides numerous historical examples to challenge Just's position; however, most of the examples demonstrate the regulation of dangerous and unusual firearms. (Doc. 54 at 8–15). Though the historical analysis of dangerous and unusual firearms is relevant to the regulation of machineguns, the analysis is too narrow. Just is charged with possession of unregistered firearms including the machinegun (Count 4) and the smooth bore pistol (Count 3). (Doc. 3 at 3). Therefore, the relevant inquiry is whether the registration requirements under §§ 5841 and 5861(d) are consistent with the Nation's tradition of regulating firearms.

Like the analysis above, the threshold question under *Bruen* is whether the Second Amendment's plain text applies to Just and his conduct. Here, the Court finds that the Second Amendment's plain text does not cover the conduct regulated by §§ 5841 and 5861(d).

Most firearms must be registered in the National Firearms Registration and Transfer Record ("NFRTR"). 26 U.S.C. §§ 5841, 5845(a). The term "firearm" includes machineguns and smooth bore pistols. *Id.* § 5845(a)–(b). Once a

11

manufacturer, importer, or maker registers the firearm, they must transfer the registration to the transferee upon transfer of the firearm. *Id.* § 5841(b). Any person possessing a registered firearm must retain proof of the registration. *Id.* § 5841(e). It is unlawful for any person to "receive or possess a firearm which is not registered to him in the [NFRTR]." *Id.* § 5861(d).

Sections 5841 and 5861(d) regulate a "nonfunctional characteristic" of firearms that has no effect on a law-abiding citizen's right or ability to defend themselves with a firearm. *United States v. Serrano*, 651 F. Supp. 1192, 1210–11 (S.D. Cal. Jan. 17, 2023). Under §§ 5841 and 5861(d), law-abiding citizens are free to possess and carry a firearm for self-defense, provided the firearm has been registered in the NFRTR. Thus, the Court cannot identify any purpose that would be served by failing to register a firearm in the NFRTR other than to avoid law enforcement efforts. ("It is [] clear from the face of the [National Firearms Act] that the [Act's] object was to regulate certain weapons likely to be used for criminal purposes . . . ." *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517 (1992)).

Further, unlike other Second Amendment challenges, §§ 5841 and 5861(d) do not impose an absolute or broad prohibition on Second Amendment rights. For example, *Heller* imposed an "absolute prohibition of handguns held and used for self-defense in the home." 554 U.S. at 636. Similarly, the challenged regulation in

*Bruen* "broadly prohibit[ed] the public carry of commonly used firearms for self-defense." 597 U.S. at 38. The Court struck down the respective regulations in *Heller* and *Bruen*. However, §§ 5841 and 5861(d) do not broadly prohibit carrying firearms for self-defense because the statutes aim to regulate a non-functional characteristic of firearms.

The federal registration requirements are akin to Justice Kavanaugh's "shall-issue" regimes. In his concurrence, Justice Kavanaugh wrote that the *Bruen* Court's decision did not affect "existing licensing regimes—known as 'shall-issue' regimes—that are employed in 43 States." *Bruen*, 597 U.S. at 79 (Kavanaugh, J., concurring). Shall-issue regimes include requirements such as "a license application to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements." *Id.* at 80. Even after *Heller* and *Bruen*, these shall-issue regimes remain "constitutionally permissible." *Id.* Consequently, if such onerous requirements for firearm possession in the States pass constitutional muster, the federal firearm registration scheme enforced through §§ 5841 and 5861(d) surely falls within the "variety" of gun regulations allowed by the Second Amendment. *See Bruen*, 597 U.S. at 80 (Kavanaugh, J., concurring).

While the challenged regulations in *Heller* and *Bruen* essentially foreclosed self-defense with commonly used firearms for most people, §§ 5841 and 5861(d)

merely restricts "one manner in which individuals may keep and carry firearms." *Serrano*, 651 F. Supp. at 1213 (quoting *United States v. Holton*, 639 F. Supp. 3d 704 at 711 (N.D. Tex. Nov. 3, 2022) (internal quotations omitted). Accordingly, the Court finds that the registration regime outlined in 26 U.S.C. §§ 5841 and 5861(d) do not infringe on any right guaranteed by the Second Amendment.

B.   *As-Applied to Just*

Just challenges the constitutionality of 18 U.S.C. § 922(o) and 26 U.S.C. §§ 5841 and 5861(d) facially and as-applied. Following the Supreme Court's directive, Just's as-applied challenge is considered first. *Fox*, 492 U.S. at 485. If unsuccessful, his facial challenge is foreclosed. *See Salerno*, 481 U.S. at 745 (holding that to prevail on a facial challenge, a movant must demonstrate that "no set of circumstances exists under which the [statute] would be valid.").

As discussed above, the Second Amendment's plain text does not cover Just's right to bear a PMF machinegun receiver. Because § 922(o) is constitutional as applied to Just, it is also facially constitutional because he has not demonstrated that "no set of circumstances exist under which the [statute] would be valid." *Salerno*, 481 U.S. at 745. Similarly, the Second Amendment's plain text does not cover the Secretary's registration regime outlined in §§ 5841 and 5861(d). Because §§ 5841 and 5861(d) are constitutional as applied to Just, they are also facially constitutional

because he has not demonstrated that "no set of circumstances exist under which the [statute] would be valid." *Salerno*, 481 U.S. at 745.

## IV.  Conclusion

For the foregoing reasons, IT IS ORDERED that Defendant John David Just's Motion to Dismiss Counts 2, 3, and 4 (Doc. 46) is DENIED.

DATED this 22nd day of January, 2025.

SUSAN P. WATTERS
United States District Judge